Filed 8/21/24  In re Se. H. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re SE. H., a Person Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> S.H., <br><br> Defendant and Appellant. | F087675 <br><br> (Super. Ct. No. JD143295-00) <br><br><br> **OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Christie Canales Norris, Judge.

Marissa Coffey, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Judith M. Denny, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P. J., Smith, J. and Meehan, J.

## INTRODUCTION

S.H. (Father) filed a timely notice of appeal following the termination of his parental rights to now four-year-old Se. H. under Welfare and Institutions Code section 366.26.[1]  Father's sole claim is that because the Los Angeles County Department of Children and Family Services (Los Angeles County) and the Kern County Department of Human Services (Department) failed to conduct an adequate inquiry into whether Se. H. is or may be an Indian child, in compliance with section 224.2, subdivision (b), the juvenile court erred when it found that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA))[2] did not apply, necessitating remand.

In accordance with this court's decisions, the Department concedes errors with respect to the inquiry of family members and follow-up on information that Se. H. may have Indian ancestry, requiring conditional reversal and remand.  (*In re K.H.* (2022) 84 Cal.App.5th 566, 620 (*K.H.*); accord, *In re E.C.* (2022) 85 Cal.App.5th 123, 157 (*E.C.*).)[3]

We accept the Department's concession and agree with the parties "that the juvenile court erred in finding the agency conducted a proper, adequate, and duly diligent inquiry, and that the error is prejudicial, which necessitates a conditional reversal of the court's finding that ICWA does not apply and a limited remand so that an inquiry that comports with section 224.2, subdivision (b), may be conducted."  (*In re Jerry R.* (2023) 95 Cal.App.5th 388, 405 (*Jerry R.*), citing *K.H., supra*, 84 Cal.App.5th at p. 621 and *E.C., supra*, 85 Cal.App.5th at p. 157.)

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2]    "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

[3]    The California Supreme Court recently resolved a split among appellate courts and held that conditional reversal is required when there has been an ICWA error under state law. (*In re Dezi C.* (Aug. 19, 2024, S275578) __ Cal.5th __, __ [2024 Cal. Lexis 4634, *2–3].)  Although the decision is not yet final, our analysis herein is in accord with *Dezi C.*

2.

## I. Petition and Detention

In December 2021, Father and Mother were married but in the process of divorcing. After A.H. (Mother) was found asleep in her car with a drug pipe and fentanyl within reach of one-year-old Se. H., who was filthy and in a heavily soiled diaper, Los Angeles County filed a petition under section 300, subdivision (b)(1)(D) (failure to protect due to substance abuse). Father was identified as Se. H.'s alleged father, but was not named in the petition. The petition included Judicial Council form ICWA-010(A) stating that Mother gave no reason to believe that Se. H. is or may be an Indian child.

At the detention hearing held in December 2021, Mother and Father requested transfer of the matter to Kern County, where they both resided. The juvenile court elevated Father's status to presumed father, found a prima facie showing had been made that Se. H. was a person described by section 300, ordered him detained from Mother and placed in the temporary custody of Los Angeles County, and released him to the home of Father. The court found no reason to know Se. H. was an Indian child.

## II. Jurisdiction and Disposition Hearing

In March 2022, the petition was amended by interlineation to combine count b-1 and count b-2, and omit reference to Mother's arrest. The court sustained the petition allegations against Mother, and found Se. H. as described by section 300, subdivision (b). The juvenile court found by clear and convincing evidence that there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of Se. H. if returned to Mother's home, and there were no reasonable means by which his physical health could be protected without removing him from Mother's physical custody. Se. H. was released to Father's home with family maintenance services

---

[4]     We include only a limited factual summary given that the sole issue on appeal is Father's ICWA claim.

for Father.  The court ordered Los Angeles County to provide enhancement services for Mother and to facilitate visitation at least three times a week.  The court set a six-month review hearing.

## III.    Transfer and Review Hearings

In April 2022, the juvenile court ordered the case transferred to Kern County.

In June 2022, after Father allowed Mother to have unauthorized, unsupervised contact with Se. H. and she left with him, the Department filed a supplemental petition seeking removal of Se. H. from Father's physical custody and placement in foster care.[5] (§ 387.)  The juvenile court ordered Se. H. detained from Father and Mother.

In August 2022, the Department filed a report, which included documentation that Father was in custody, and both Mother and Father failed to submit to drug testing and failed to maintain regular visitation with Se. H.  The court adjudged Se. H. a dependent pursuant to sections 387 and 342, ordered him removed from Father's physical custody, and directed the Department to provide family reunification services for six months.  The court also made a finding that ICWA did not apply and set a review hearing.

In January 2023, the juvenile court continued reunification services for six months for Father and terminated services for Mother.

In July 2023, the juvenile court found no progress by Father and terminated family reunification services, ordered the Department to facilitate visitation for Father and Mother, and set a selection and implementation hearing.

## IV.    Section 366.26 Selection and Implementation Hearing

In February 2024, the juvenile court found Se. H. was adoptable and the parental-benefit exception did not apply; terminated the parental rights of Father and Mother; and ordered Se. H. be placed for adoption.  (§ 366.26.)

---

[5]    Mother and Se. H. were located at the end of May 2022, and Se. H. was placed in the home of maternal aunt.

4.

## DISCUSSION

## I. ICWA and Duty of Inquiry Under California Law

### A. ICWA

"ICWA was enacted in 1978 by Congress 'out of concern that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies." 92 Stat. 3069, 25 U.S.C. §1901(4). Congress found that many of these children were being "placed in non-Indian foster and adoptive homes and institutions," and that the States had contributed to the problem by "fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." §§1901(4), (5). This harmed not only Indian parents and children, but also Indian tribes. As Congress put it, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." §1901(3).' (*Haaland v. Brackeen* (2023) 599 U.S. ___ [143 S.Ct. 1609, 1623] (*Haaland*); accord, *Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32–36 (*Holyfield*); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*).)

"'[ICWA] thus aims to keep Indian children connected to Indian families. "Indian child" is defined broadly to include not only a child who is "a member of an Indian tribe," but also one who is "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." §1903(4). If the Indian child lives on a reservation, ICWA grants the tribal court exclusive jurisdiction over all child custody proceedings, including adoptions and foster care proceedings. §1911(a). For other Indian children, state and tribal courts exercise concurrent jurisdiction, although the state court is sometimes required to transfer the case to tribal court. §1911(b). When a state court adjudicates the proceeding, ICWA governs from start to finish. That is true regardless of whether the proceeding is "involuntary" (one to which the parents do not

consent) or "voluntary" (one to which they do).' (*Haaland, supra*, 599 U.S. at p. ___ [143 S.Ct. at p. 1623]; accord, *Holyfield, supra*, 490 U.S. at p. 36.)

"'Involuntary proceedings are subject to especially stringent safeguards. See 25 CFR §23.104 (2022); 81 Fed. Reg. 38832–38836 (2016). Any party who initiates an "involuntary proceeding" in state court to place an Indian child in foster care or terminate parental rights must "notify the parent or Indian custodian and the Indian child's tribe." §1912(a). The parent or custodian and tribe have the right to intervene in the proceedings; the right to request extra time to prepare for the proceedings; the right to "examine all reports or other documents filed with the court"; and, for indigent parents or custodians, the right to court-appointed counsel. §§1912(a), (b), (c). The party attempting to terminate parental rights or remove an Indian child from an unsafe environment must first "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." §1912(d). Even then, the court cannot order a foster care placement unless it finds "by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." §1912(e). To terminate parental rights, the court must make the same finding "beyond a reasonable doubt." §1912(f).' (*Haaland, supra*, 599 U.S. at p. ___ [143 S.Ct. 1609, 1623–1624].)

"ICWA sets the minimum standards, providing, 'In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard.' (25 U.S.C. § 1921; accord, Welf. & Inst. Code, § 224, subd. (d).) 'The minimum standards established by ICWA include the requirement of notice to Indian tribes in any involuntary proceeding in state court to place a child in

foster care or to terminate parental rights "where the court knows or has reason to know that an Indian child is involved."' (*Isaiah W., supra*, 1 Cal.5th at p. 8, quoting 25 U.S.C. § 1912(a).) 'ICWA's notice requirements serve two purposes. First, they facilitate a determination of whether the child is an Indian child under ICWA.' (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. § 1903(4).) 'Second, ICWA notice ensures that an Indian tribe is aware of its right to intervene in or, where appropriate, exercise jurisdiction over a child custody proceeding involving an Indian child.' (*Isaiah W., supra*, at p. 8, citing 25 U.S.C. §§ 1911(a), (c), 1912(a).)

"To facilitate notice in appropriate cases, federal law provides, 'State courts must ask each participant in an emergency or voluntary or involuntary child custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a) (2023).) California law requires more and, relevant to the issue raised here, imposes on counties a broad duty of inquiry into whether a child placed in the temporary custody of the county is or may be an Indian child. (§ 224.2, subd. (b).)

"**B.    Duty of Inquiry Under California Law**

"In 2006, 'persistent noncompliance with ICWA led [our state] Legislature … to "incorporate[] ICWA's requirements into California statutory law."' (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91, quoting *In re W.B.* (2012) 55 Cal.4th 30, 52 (*W.B.*).) '"In 2016, new federal regulations were adopted concerning ICWA compliance."' (*K.H., supra*, 84 Cal.App.5th at p. 595, quoting *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*) [citing 81 Fed.Reg. 38864 (June 14, 2016), revising 25 C.F.R. § 23 (2019)].) Prior to that time, 'neither ICWA itself nor the implementing federal regulations in effect … imposed a duty on courts or child protective agencies to inquire whether a child involved in a dependency

7.

proceeding was an Indian child.' (*In re T.G.* (2020) 58 Cal.App.5th 275, 289 (*T.G.*), citing *In re A.B.* (2008) 164 Cal.App.4th 832, 838 & *In re H.B.* (2008) 161 Cal.App.4th 115, 120.)  '[F]ederal regulations governing ICWA … now require an ICWA inquiry be made at the inception of dependency proceedings, as well as at all proceedings that "may culminate" in foster care placement or termination of parental rights.' (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 323, fn. 11, citing 25 C.F.R. §§ 23.2(2), 23.107(a) (2022) & *In re Austin J.* (2020) 47 Cal.App.5th 870, 883.)

"Subsequently, the California Legislature enacted Assembly Bill No. 3176,[6] effective January 1, 2019, which '"made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements."'  (*K.H., supra*, 84 Cal.App.5th at p. 595, quoting *D.S., supra*, 46 Cal.App.5th at p. 1048 [citing Assem. Bill 3176 & *In re A.W.* (2019) 38 Cal.App.5th 655, 662, fn. 3].)  In relevant part, Assembly Bill 3176 repealed former sections 224.2, pertaining to notice, and 224.3, pertaining to inquiry, and reenacted them in different form.  (Stats. 2018, ch. 833, §§ 4–7.)  Section 224.3 now governs notice and section 224.2 inquiry.[7]

"Now, as then, California law expressly recognizes 'There is no resource that is more vital to the continued existence and integrity of Indian tribes than their children, and the State of California has an interest in protecting Indian children who are members or citizens of, or are eligible for membership or citizenship in, an Indian tribe.  The state is committed to protecting the essential tribal relations and best interest of an Indian child

---

[6]  "Assembly Bill No. 3176 (2017–2018 Reg. Sess.) (Assembly Bill 3176)." (*Jerry R., supra*, 95 Cal.App.5th at p. 410, fn. 11.)

[7]  "Section 224.2 was subsequently amended by Assembly Bill No. 686 (2019–2020 Reg. Sess.), effective January 1, 2020; Assembly Bill No. 2944 (2019–2020 Reg. Sess.), effective September 18, 2020; and Assembly Bill No. 2960 (2021–2022 Reg. Sess.), effective January 1, 2023.  Those amendments did not affect subdivision (b) of section 224.2, however." (*Jerry R., supra*, 95 Cal.App.5th at pp. 410–411, fn. 12.)

by promoting practices, in accordance with the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.) and other applicable state and federal law, designed to prevent the child's involuntary out-of-home placement and, whenever that placement is necessary or ordered, by placing the child, whenever possible, in a placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with the child's tribe and tribal community.' (§ 224, subd. (a)(1).)[8] Assembly Bill 3176 revised and recast the duties of inquiry and notice, in accordance with federal law, and, relevant to inquiry, 'revise[d] the specific steps a social worker, probation officer, or court is required to take in making an inquiry of a child's possible status as an Indian child.' (Legis. Counsel's Dig., Assem. Bill 3176, Stats. 2018, ch. 833, p. 1.)

"As this court summarized in *K.H.*, '"[n]otice to Indian tribes is central to effectuating ICWA's purpose …."' (*In re T.G.* (2020) 58 Cal.App.5th 275, 288 (*T.G.*), citing *Isaiah W., supra*, [1 Cal.5th] at p. 8.)  However, it is typically "not self-evident whether a child is an Indian child" (*Benjamin M., supra*, 70 Cal.App.5th at p. 741), and "the question of membership is determined by the tribes, not the courts or child protective agencies" (*T.G., supra*, at p. 294).  To ensure notice in cases in which it is known or there is reason to know an Indian child is involved (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a)), the law imposes an affirmative and ongoing duty to inquire whether a child subject to dependency proceedings is or may be an Indian child (§ 224.2, subd. (a))' (*K.H., supra*, 84 Cal.App.5th at p. 588), and following the passage of Assembly Bill 3176, 'agencies now have a broader duty of inquiry and a duty of documentation'

---

**8**    "Assembly Bill 3176 only effected minor technical changes to section 224, subdivision (a)(1)." (*Jerry R., supra*, 95 Cal.App.5th at p. 411, fn. 13.)

(*K.H., supra*, at p. 588, fn. omitted, citing § 224.2, subd. (b) & [Cal. Rules of Court,] rule 5.481(a)(5)).[9]" (*Jerry R., supra*, 95 Cal.App.5th at pp. 407–411, fn. omitted.)

## II. Standard of Review

"'The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, "subject to reversal based on sufficiency of the evidence."' (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, 85 Cal.App.5th at p. 142; *Adoption of M.R.* (2002) 84 Cal.App.5th 537, 542; rule 5.482(c).) First, '[t]he court must find there is "no reason to know whether the child is an Indian child," which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply.' (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).) Second, '[t]he juvenile court must … find a "proper and adequate further inquiry and due diligence .…"' (*K.H., supra*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C., supra*, at p. 143; rule 5.482(c)(1).)

"The juvenile court's finding on the second element 'requires the … court to "engage in a delicate balancing of" various factors in assessing whether the … inquiry was proper and adequate within the context of ICWA and California law, and whether … [there was] due diligence.' (*K.H., supra*, 84 Cal.App.5th at p. 601, quoting *In re Caden C.* (2021) 11 Cal.5th 614, 640; accord, *E.C., supra*, 85 Cal.App.5th at p. 143; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*K.H., supra*, at p. 589; accord, *E.C., supra*, at p. 143; *In re Ezequiel G., supra*, at p. 1003.)" (*Jerry R., supra*, 95 Cal.App.5th at p. 427.)

---

**9**     All further references to rules are to the California Rules of Court.

## III. Analysis

### A. Error

"Although complying with the duty of inquiry and documentation under ICWA is unlikely to 'prove onerous' in most cases [citation], in no event may we interpret the law to relieve the court or the agency of complying with the plain directives imposed by statute and rule (*K.H., supra*, [84 Cal.App.5th] at p. 620; see § 224.2; rules 5.480–5.482). There may be cases in which there is no one else to ask beyond the parents [and a few relatives], but, if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) Properly developed and documented, 'the court has relatively broad discretion to determine [that] the … inquiry was proper, adequate, and duly diligent on the specific facts of the case.' (*K.H., supra*, at p. 589; accord, *E.C., supra*, 85 Cal.App.5th at p. 157.)" (*Jerry R., supra*, 95 Cal.App.5th at p. 428.)

In this case, after Father and Mother denied Indian ancestry at the outset of the dependency proceeding in December 2021, the juvenile court found that ICWA did not apply. In August 2002, following transfer of the matter to Kern County and prior to this court's decisions in *K.H.*, *E.C.*, and *Jerry. R.*, the juvenile court again found ICWA did not apply. However, reports reflect possible Indian or Alaskan Eskimo ancestry in Mother's family; one paternal relative reported possible Indian ancestry on Father's side with the Hopi tribe; a second paternal relative reported possible Indian ancestry with the Chickasaw tribe; a third paternal relative reported ancestry with the Mayo tribe, which is not a federally recognized tribe; and a maternal relative reported that Mother had Blackfeet ancestry through maternal grandfather.

Father argues that the Department failed to conduct any follow-up based on this information, including contacting the requisite federal and state agencies, and the three tribes. Father also points out paternal aunt and paternal uncle were not contacted by the Department, and maternal great-grandmother and great-grandfather were not asked about possible Indian ancestry, despite the Department's contact with maternal great-

11.

grandmother. Therefore, he contends, the record does not reflect the Department conducted the proper, adequate and duly diligent inquiry required under section 224.2 and the juvenile court erred in finding that ICWA does not apply. (§ 224.2, subds. (b), (i)(2); rules 5.481(a)(5), 5.482(c).)

After the record was augmented to include a declaration concerning the Department's inquiry as of July 2022, on the Department's motion, the Department conceded the record reflects its inquiry was inadequate because it neglected to obtain information from maternal relatives with whom it had contact and it failed to fulfill its duty of further inquiry with respect to the Cherokee[10] tribe. The augmented record reflects that the Department sent inquiries to the Hopi and Chickasaw tribes but as of the date of the declaration, the Department had not yet received a response from the Chickasaw tribe and there is no indication of any follow-up regarding the Blackfeet tribe.

Under these circumstances, we accept the Department's concession of error. As we explained in *E.C.*, "'General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved. [Citation.] Additional investigation may not develop further information establishing the need for ICWA notice, but it is essential to the enforcement of the court's and child protective agency's "affirmative and continuing duty to inquire" to construe broadly the duty to make further inquiry.'" (*E.C., supra*, 85 Cal.App.5th at p. 147, quoting *In re T.G.* (2020) 58 Cal.App.5th 275, 295.)

### B. Prejudice

"'"ICWA compliance presents a unique situation"'" (*K.H., supra*, 84 Cal.App.5th at p. 608, quoting *In re K.R.* (2018) 20 Cal.App.5th 701, 708; accord, *E.C., supra*, 85 Cal.App.5th at p. 152), because 'ICWA is not directed at reaching, or protecting, a specific outcome on the merits' (*K.H., supra*, at p. 609; accord, *E.C., supra*, at p. 154).

---

[10] The reference to the Cherokee tribe appears to be error.

Rather, "'[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings" ([*In re*] *N.G.* [(2018) 27 Cal.App.5th 474,] 484, citing *In re K.R., supra*, at p. 708), and an adequate … inquiry facilitates the information gathering upon which the court's ICWA determination will rest.' (*K.H., supra*, at p. 608; accord, *E.C., supra*, at pp. 152–153.) Here, the appealing part[y is Father] and [he does] not bear the burden of complying with ICWA requirements. (Rule 5.481(a); see *K.H., supra*, at p. 608; *E.C., supra*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe. (*K.H., supra*, at p. 596; accord, *E.C., supra*, at pp. 139–140.)

"As we recognized in *K.H.*, 'the duty of inquiry is a continuing one (§ 224.2, subd. (a)[; rule 5.481(a)], … [but] if the inquiry is inadequate at the outset, the likelihood that the opportunity to gather relevant information will present itself later in the proceeding declines precipitously.' (*K.H., supra*, 84 Cal.App.5th at p. 609; accord, *E.C., supra*, 85 Cal.App.5th at p. 154.) 'The relevant rights under ICWA belong to Indian tribes and they have a statutory right to receive notice where an Indian child may be involved so that they may make that determination. It necessarily follows that [in the context of ICWA and consistent with *A.R.*,] the prejudice to those rights lies in the failure to gather and record the very information the [lower] court needs to ensure accuracy in determining whether further inquiry or notice is required, and whether ICWA does or does not apply.' (*K.H., supra*, at p. 591; accord, *E.C., supra*, at p. 154.) '[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard.' (*K.H., supra*, at p. 610, citing *A.R., supra*, 11 Cal.5th at pp. 252–254; accord, *E.C., supra*, at p. 155.)" (*Jerry R., supra*, 95 Cal.App.5th at pp. 429–431.)

"Under these circumstances, [the] inquiry …'fell … short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law, and remand for correction is required.' (*K.H., supra*, 84 Cal.App.5th at p. 620, citing *A.R., supra*, 11 Cal.5th at pp. 252–253; accord, *E.C., supra*, 85 Cal.App.5th at p. 156.) 'A finding of harmlessness on this record would necessarily require speculation and "is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes."' (*E.C., supra*, at p. 155, quoting *K.H., supra*, at p. 611.)" (*Jerry R., supra*, 95 Cal.App.5th at p. 431.)

We recognize that the record reflects the Department encountered difficulties in making inquiries, including individuals declining to provide information to social workers and shielding elderly relatives from contact with social workers, unreturned phone calls, and invalid phone numbers. We reiterate that "'the juvenile court [must] direct the Department to conduct a proper, adequate, and duly diligent inquiry under section 224.2, subdivision[s] (b) [and (e)], and document its inquiry in the record in compliance with rule 5.481(a)(5).'" (*E.C., supra*, 85 Cal.App.5th at p. 157, quoting *K.H., supra*, 84 Cal.App.5th at p. 621; accord, *Jerry R., supra*, 95 Cal.App.5th at p. 431.) However, the Department cannot force individuals to divulge information or return phone calls, and it is not required to undertake exhaustive investigative searches. Therefore, "'So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. (§ 224.2, subd. (i)(2).)'" (*E.C., supra*, at p. 157, quoting *K.H., supra*, at p. 621; accord, *Jerry R., supra*, at p. 431.)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the court for the limited purpose of ensuring compliance with the inquiry and documentation provisions set forth in section 224.2 and rule 5.481.

If, after determining that an adequate inquiry was made, the court finds that ICWA applies, the court shall proceed in compliance with ICWA and related California law. If the court instead finds that ICWA does not apply, the court shall reinstate its ICWA finding.